# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re Jeannie Marie Lindskog, | ) |
| | ) |
| | ) |
| | ) APPEAL CASE NO. 11-CV-00476 |
| Jeannie Marie Lindskog, | ) |
|     Debtor-Appellant, | ) Chapter 13 |
| v. | ) Bankruptcy Case No. 10-27037-jes |
| | ) |
| M&I Bank FSB | ) Adv. Pro. 10-02278-jes |
|     Creditor-Appellee. | ) |

## APPELLANT'S BRIEF

On Appeal From the Decision and Order Entered In the United States Bankruptcy Court, Eastern District of Wisconsin, Honorable James E. Shapiro, filed on April 13, 2011

**LAKELAW**
**Attorneys for the Debtor-Appellant**

By: David P. Leibowitz (State Bar No. 1058663)
Ryan Blay (State Bar No 1076006)

6905 Green Bay Road, Suite 101
Kenosha, WI 53142
Telephone: 262-694-7300
Fax: 262-694-7301
E-mail: dleibowitz@lakelaw.com;
E-mail: rblay@lakelaw.com

1

Case 2:11-cv-00476-CNC   Filed 06/16/11   Page 1 of 17   Document 5

# TABLE OF CONTENTS

I. STATEMENT OF JURISDICTION..................................................................5

II. STATEMENT OF ISSUE AND STANDARD OF REVIEW........................5

   A. Issue.......................................................................................................5

   B. Standards of Review............................................................................5

III. STATEMENT OF THE CASE.....................................................................6

   A. Nature of the Case................................................................................6

   B. Course of the Proceedings and Disposition Below............................6

   C. Statement of the Facts..........................................................................7

IV. ARGUMENT..................................................................................................8

   A. The recent and better reasoned bankruptcy court decisions as well as the only published District Court decision support lien stripping in chapter 13 for a good faith debtor even absent a discharge............................8

   B. The plain language of the Bankruptcy Code both prior to and subsequent to BAPCPA compel allowance of lien stripping for a good faith chapter 13 debtor even absent discharge............................................................8

   C. Common sense and pragmatic statutory interpretation of the Bankruptcy Code called for by recent Supreme Court jurisprudence compels allowance of lien stripping for a good faith chapter 13 debtor in even absent discharge......................................................................12

   D. Policy arguments compel allowance of lien stripping for a good faith chapter 13 debtor even absent discharge............................................14

V. CONCLUSION...............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Davis v. TD Bank (In re Davis)*, 2011 WL 1237638 (Bankr. D. Md. March 30, 2011).............8

*Dewsnup v. Timm*, 502 U.S. 410 (1992)....................................................................10

*Dye v. United States*, 360 F.3d 744 (7th Cir. 2004).......................................................5

*Fair v. GMAC Mortgage LLC (In re Fair)*, 10-cv-01128 (RTR) (ED WI, April 19, 2011).........7

*Hamilton v. Lanning*, 560 U.S. _____ (2010)...............................................................13

*In re Bartee*, 212 F.3d 277 (5th Cir. 2000).................................................................10

*In re Blosser*, 2009 WL 1064455 (Bankr. E.D. Wis. April 15, 2009)................................8

*In re Casey, 428 B.R. 519* (Bankr. S.D. Cal. 2010).......................................................8

*In re Fenn*, 428 Bankr. N.D. Ill. 2010)......................................................................8

*In re Gerardin*, 2011 WL 1118495 (Bankr. S.D. Fla. 2011)...........................................8

*In re Goeb*, 675 F.2d 1386 (9th Cir. 1982).................................................................15

*In re Grignon*, Case No. 10-34196-tmb13, Bankr. D. Or. Dec. 10, 2010).........................8

*In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010).........................................................8

*In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008).......................................................8

*In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 2005).........................................................5

*In re Sidebottom*, 430 F.3d 893 (7th Cir. 2005).........................................................16

*In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010).......................................................8

*Maramma v. Citizens Bank of Massachusetts*, 549 U.S. _____ (2007)...........................13

*Milavetz Gallop & Milavetz, P.A. v. United States*, 559 U.S. ____ (2007).......................13

*Schwab v. Reilly*, 560 U.S. _____ (2010)..................................................................13

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989)...................................12

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. _____ (2010)..............................13

**Statutes**

11 U.S.C. §506(a)..................................................................................9

11 U.S.C. §506(d)..................................................................................9

11 U.S.C. §1322(b)(2)...........................................................................10

11 U.S.C. §1325(a)(5)............................................................................13

11 U.S.C. §1328(f).................................................................................9

28 U.S.C. §157(b)..................................................................................5

28 U.S.C. §158(a)..................................................................................5

# I. STATEMENT OF JURISDICTION

This is an appeal from a final decision and order of the United States Bankruptcy Court, Eastern District of Wisconsin, deciding a complaint to determine secured status of claim, core proceeding under 28 U.S.C. §157(b)(2)(B) and (K). The bankruptcy court entered its final Decision and Order on April 13, 2011 determining the secured status of appellee's claimed junior mortgage liens and holding that it could not be "stripped" even though the property in question is worth more than even the prior first mortgage. Jeannie Marie Lindskog (hereinafter "Lindskog" or "Ms. Lindskog") timely appealed on April 20, 2011. This Court has appellate jurisdiction pursuant to 28 U.S.C. §158(a).

# II. STATEMENT OF ISSUE AND STANDARD OF REVIEW

## A. Issue

Did the bankruptcy court erred in holding that the debtor is not eligible to avoid the junior lien held by M&I Bank on the debtor's property solely because of the debtor was ineligible for a discharge in her chapter 13 case owing to her prior Chapter 7 discharge within four years prior to the date she filed her present chapter 13 case?

## B. Standards of Review

District courts hearing bankruptcy court appeals review findings of fact under a clearly erroneous standard of review. *See, e.g. Dye v. United States*, 360 F.3d 744, 747 (7th Cir. 2004). A bankruptcy court's conclusions of law are subject to de novo review. *See, e.g., In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995).

## III. STATEMENT OF THE CASE

### A. Nature of the Case

This case involves lien stripping. Real estate values in Wisconsin, like the rest of the nation, have declined drastically in recent years. As a result, homeowners frequently find themselves "underwater" on their mortgages. Moreover, values have declined so drastically that junior lenders frequently find that their lien positions are unsupported by any collateral. The value of the property has declined to less than the value of senior liens.

Under this circumstance, the junior lien is unsecured. In chapter 13, a fully unsecured lien may be treated as an unsecured claim. And upon completion of the chapter 13 plan, that lien is stripped away, avoided and held for naught. This is lien stripping.

Debtor-Appellant Jeannie Lindskog previously filed a chapter 7 case, within 4 years prior to the filing of the instant chapter 13 case. She received a discharge in the prior chapter 7 case. However, she still had difficulty paying all her debts, especially the burdensome junior liens on her home.

So she filed an adversary proceeding within her chapter 13 bankruptcy case to avoid the lien held by M&I Bank FSB ("M&I") on home. M&I objected to the confirmation of Lindskog's Chapter 13 Plan and answered the Adversary Complaint asserting that Lindskog was ineligible strip the mortgage lien because she had received a discharge in chapter 7 within the past 4 years and was not eligible to receive a discharge in the present chapter 13 case.

### B. Course of the Proceedings and Disposition Below

Lindskog filed her Chapter 13 Bankruptcy petition on April 29, 2010. Ultimately, she filed an Amended Chapter 13 Plan proposing to pay almost $43,000 over a plan period of five years.[1] Total unsecured claims anticipated are less than $20,000. M&I objected to the confirmation of the plan.

---

[1] M & I Bank FSB's was not entitled to payment of an unsecured claim as its right to payment had been discharged in Ms. Lindskog's prior chapter 7 case

After full briefing, including an amicus brief filed by National Association of Consumer Bankruptcy Attorneys and after oral arguments, the Bankruptcy Court entered a decision and order on April 13, 2011. It should be noted that the Bankruptcy Court's decision and order was rendered after the decision of this District Court in *Fair v. GMAC Mortgage LLC* (*In re Fair*), 10-cv- 01128 (RTR) (ED WI. April 19, 2011), holding that a good faith debtor in chapter 13 may strip a fully unsecured lien even though the debtor had been granted a discharge in chapter 7 within the prior 4 years. The Bankruptcy Court expressly disregarded *Fair v. GMAC Mortgage LLC* taking the position that it was not bound by this precedent. Lindskog appeals from the Bankruptcy Court's final decision and order.

### C. Statement of the Facts

Jeannie Lindskog is a Wisconsin homeowner and resident. She maintains a domicile in Chicago, Illinois as a condition of her employment as a teacher in Chicago. She borrowed against her home to help her children with their real estate ventures, which unfortunately failed. There is no dispute that the current value of Ms. Lindskog's home is much less than even the first mortgage lien of $346,000. The uncontested certified appraisal values the Walworth County property at $323,000.[2]

Accordingly, M & I's junior mortgage is totally unsecured.

Despite her prior chapter 7 discharge, Ms. Lindskog still has experienced financial difficulties. Her work with Chicago Public Schools as a counselor requires that she maintain a Chicago address where she lives during the weekdays as a condition of employment. This is burdensome to her as well as other unsecured debt that arose after she received her prior discharge in chapter 7 in August of 2008. No issue has been raised as to Ms. Lindskog's good faith in connection with the present chapter 13 case or her plan.

---

[2] Because Wells Fargo failed to file a Proof of Claim in the Chapter 13 case, the precise amount due as of the date of the filing remains unknown.

## IV. ARGUMENT

### A. The recent and better reasoned bankruptcy court decisions as well as the only published District Court decision support lien stripping in chapter 13 for a good faith debtor even when absent a discharge

Following the enactment of BACPA in 2005, bankruptcy courts across the nation have split on the issue presented in this appeal. Early decisions on this point tended to reject the notion of allowing lien stripping in these cases. This line of authority began with *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008). Several subsequent cases relied on *Jarvis*, including *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010); *In re Gerardin*, 2011 WL 1118495 (Bankr. S.D. Fla. 2011); and *In re Blosser* 2009 WL 1064455 (Bankr. E.D. Wis. April 15, 2009).

More recent and better reasoned opinions have rejected the *Jarvis* line of cases, beginning with *In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010); *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010); and *In re Casey*, 428 B.R. 519 (Bankr. S.D. Cal. 2010); *In re Grignon* (Case No. 10-34196-tmb13, Bankr. D. OR. Dec. 10, 2010); *Davis v. TD Bank (In re Davis)* 2011 WL 1237638 (Bankr. D. MD. March 30, 2011).

The first known district court decision to address this issue, *Fair v. GMAC Mortgage LLC (In re Fair)*, 10-cv-01128 (RTR) (ED WI. April 19, 2011) from this District Court, agreed with the current and better reasoned line of authority. Judge Randa's analysis in *Fair* is correct and should be followed in this case.

### B. The plain language of the Bankruptcy Code both prior to and subsequent to BAPCPA compels allowance of lien stripping for a good faith chapter 13 debtor even absent discharge.

Lindskog filed her prior chapter 7 case on May 17, 2008. Accordingly, she cannot receive a discharge in any chapter 13 case commenced prior to May 17, 2012. This case was filed just about two years after the prior chapter 7 case. There is no allegation that she filed her subsequent chapter 13 case or proposed her chapter 13 plan other than in good faith. So while she is entitled to the benefits of a chapter 13 case, such as that of the automatic stay, she is not

8

entitled to a discharge of her debts in the present case under §1328(f) of the Bankruptcy Code. 11 USC § 1328(f). Nevertheless, she is proposing a chapter 13 plan which commits 100% of her projected disposable income for the applicable commitment period. These payments would be more than enough to pay 100% of her not-inconsiderable unsecured debts under her plan.

In his decision in *Fair v. GMAC Mortgage*, Judge Randa first considered Bankruptcy Code §506(a) which provides:

> (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. §506(a)(1).

This section comes into play since Lindskog sought to have M & I's claim to be determined to be unsecured. It is beyond dispute that M & I's claim against Ms. Lindskog is unsecured. Its interest in the debtor's interest in Ms. Lindskog's Wisconsin home is zero. That's because the Wisconsin home is worth less than even the first mortgage lien against that property. So the value of its *in rem* claim is also zero.

Upon a finding that the value of M & I's secured claim is zero, the Bankruptcy Court must then apply Bankruptcy Code §506(d) to eliminate the wholly unsecured mortgage as a lien against the real estate. This statute states:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
>> (1) such claim was disallowed only under section 502 (b)(5) or 502 (e) of this title; or
>> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

9

11 U.S.C. §506(d).

While M & I does hold a lien against Lindskog's home, this secures a claim which is not a secured claim. Accordingly, the plain language of Section 506(d) requires that the lien be held void. The only two exceptions set forth in Section 506(d) do not come into play.

Ms. Lindskog was not able to receive this relief in her chapter 7 case. That is because the relief sought under §506(d) does not apply to chapter 7 debtors after the United States Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). However, it is relief frequently sought by chapter 13 debtors, especially, as in Plaintiff's case, when property values have dropped precipitously and have left debtors with severely unsecured junior liens.

Judge Randa concluded that §506(d) is not proper, in light of *Dewsnup*, as the mechanism for lien stripping in Chapter 13. *Fair v. GMAC Mortgage, LLC, supra*. Judge Randa does not expressly decide which Code section is appropriate, although he continues with an analysis of §1322(b)(2) concluding that the lien stripping procedure is "expressly and broadly permitted". *In re Bartee*, 212 F.3d 277, 291 n.21 (5th Cir. 2000).

Bankruptcy Code §1322(b)(2) provides:

> In chapter 13, the debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . ." § 1322(b)(2) (emphasis added).

Here, this statute is used to distinguish the so-called "Chapter 20"[3] case at bar from other cases in which debtors have attempted to use the Code in vain to bifurcate partially unsecured mortgages, or to try to use the lien stripping mechanisms in Chapter 13. However, lien stripping does not concern modification of a secured claim against a personal residence. Rather, it

---

[3] So named because the debtor files a Chapter 7 petition, followed by a Chapter 13 petition within the next four years, thus denying the debtor the right to a discharge in Chapter 13.
10

concerns a determination that a claim secured by a mortgage is not entitled to continued enjoyment of a lien since the claim is wholly unsecured, pursuant to Bankruptcy Code §506(d).

*Jarvis* and cases following *Jarvis* improperly focus on the amendments in BAPCPA adding section 1328(f) denying the eligibility of a debtor to receive a discharge in a chapter 13 case for four years after a prior chapter 7 case. These cases conclude that this amendment somehow has a bearing on the ability of a debtor to strip a fully unsecured lien in chapter 13.

The *Jarvis* line of authority draws the inference that Congress intended to deny debtors the ability to strip fully unsecured liens to the extent that it limited the ability to discharge debts in Bankruptcy Code§1328(f). However, the *Jarvis* line of authority does not and cannot reconcile the plain language of §1328(f) with the other provisions remaining in the Bankruptcy Code which not only authorizes but mandates the elimination of a fully unsecured lien in chapter 13 without regard to discharge.

As a more persuasive example of interpreting the maze of the Bankruptcy Code, *In re Tran* is highly pertinent. There, as here, the Debtor sought to strip a junior lien in chapter 13 after having previously filed a chapter 7 case within the prior 4 years. The bankruptcy court stated as follows in authorizing the avoidance of the junior lien:

> The Trustee contends that chapter 13 debtors that are ineligible for a discharge, such as Tran and Bennett, may not utilize § 506(a) and (d) to strip off a lien on the debtor's principal residence, even if the lien is completely unsecured. There are a number of bankruptcy court decisions that so hold or so state. See *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008); *In re Mendoza*, 2010 WL 736834 (Bankr. D. Colo. 2010); *In re Blosser*, 2009 WL 1064455 (Bankr. E.D. Wis. 2009); *In re Winitzky*, No. 1:08-bankruptcy-19337-MT (Bankr. C.D. Cal. 2009). Several decisions, however, hold to the contrary. See *Hart v. San Diego Credit Union*, No. 09CV1017 JLS (POR) (S.D. Cal. 2010); *In re Casey*, 2010 WL 1766372 (Bankr. S.D. Cal. 2010).
>
> This court agrees with the decisions holding that the Bankruptcy Code does not condition a chapter 13 debtor's right to strip off a wholly unsecured junior lien on the debtor's eligibility for a discharge. Rather, such right is conditioned on the debtor's obtaining confirmation of, and performing under, a chapter 13 plan that meets all of the statutory requirements. At the same time, the court emphasizes that if a chapter 13 case is filed primarily to avoid a junior lien in an effort to skirt

11

the Supreme Court's holding in *Dewsnup*, then such filing would not be in good faith, and such a case should be dismissed.

The starting point for statutory interpretation is the language of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990). In this respect, it is significant that § 109(a), (e), and (g), which sets forth the eligibility requirements for chapter 13, does not condition a debtor's eligibility for relief under chapter 13 on the debtor's eligibility for a discharge. Nor does § 109 preclude chapter 13 relief to a debtor that has recently received a discharge in chapter 7. , 501 U.S. 78, 11 S.Ct. 2150 (1991).

It is equally significant that, although § 1325(a) and (b) sets forth numerous requirements for confirmation of a chapter 13 plan, nothing in § 1325 conditions confirmation on the debtor being eligible for a discharge.

Moreover, nothing in § 506, § 1322, or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a discharge.

Section 349(b)(1)(C) provides that a dismissal of a bankruptcy case "reinstates... any lien avoided under section 506(d) of this title." But a chapter 13 case in which a debtor completes a confirmed plan is "closed," not "dismissed" at the conclusion of the plan. Section 350(a);3 Fed..R.Bankr. P. 5009. Similarly, § 1325(a)(5)(B)(i)(II) conditions any permanent lien modification of a secured claim, not on a discharge, but rather, on completion of a debtor's chapter 13 plan.

*In Re Tran.* 2010 WL 2609041 (Bankr. N.D. Cal. 2010).

The *Tran* court stated it best. Judge Randa's decision in *Fair v. GMAC Mortgage LLC* stands with the better reasoned opinions and should be followed. Congress wrote BAPCPA on the foundation of the existing Bankruptcy Code. So unless a specific change was clearly mandated, past practice, including practice regarding lien stripping should be respected.

### C. Common sense and pragmatic statutory interpretation of the Bankruptcy Code called for by recent Supreme Court jurisprudence compels allowance of lien stripping for a good faith debtor in chapter 13 even absent discharge

The Bankruptcy Abuse Prevention Consumer Protection Act has spawned a great deal of controversy on the question of statutory interpretation, much of it ending up in the United States Supreme Court. Among these cases include *Milavetz Gallop & Milavetz, P.A. v. United States*, 559 U.S. ___ (2010); *Maramma v. Citizens Bank of Massachusetts*, 549 U.S. ___ (2007);

12

*Hamilton v. Lanning,*, 560 U.S. ___ (2010); *Schwab v. Reilly*, 560 U.S. ___ (2010); and *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. ___ (2010). While we don't propose to review each of these cases in depth, it is clear that all involve a tension between the "plain language" of the Bankruptcy Code and perhaps an "inferred meaning" of the Bankruptcy Code taking into account the court's view of the overall meaning and intention of Congress. It appears that no uniform rule of construction of the Bankruptcy Code has been announced by the Supreme Court taking into account the variety of decisions and reasoning for decisions. Nevertheless, the "plain language" of Bankruptcy Code section 1325(a)(5) addresses the rights of allowed secured claims on real estate. Section 506(a) and 506(d) address the rights of unsecured creditors. M & I is an unsecured creditor in this chapter 13 case and is entitled to no more rights than that of an unsecured creditor, including the possibility of its lien being stripped and treated as unsecured. Upon full performance of Debtor's chapter 13 plan, M&I's lien should be avoided and expunged from the real estate records.

The arguments set forth by Lindskog and other debtors establishing authority to avoid such liens in no-discharge Chapter 13 cases will allow this Court to use the literal language of the code as well as harmonize the code in light of the BAPCPA amendments. In *Milavetz*, one portion of the challenge to the statutory text was dispensed with quickly by the Supreme Court "in light of the statute's unambiguous language". *Milavetz*, 559 U.S. ___ at P. 6, FN3. Justice Thomas is even more blunt in his majority opinion in *Schwab v. Reilly*:

> Although we may look to dictionaries and the Bankruptcy Rules to determine the meaning of words the Code does not define, see, e.g., Rousey, supra, at 330, the Code's definition of the "property claimed as exempt" in this case is clear.

*Schwab*, 560 U.S. ___ at 11.

The Court may consider the statutory intent of the Code in its analysis, but the starting point is almost always with the plain language of the Code. In *Hamilton v. Lanning*, the Court, under Justice Alito, wrote:

> First, respondent's argument is supported by the ordinary meaning of the term "projected." "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U. S. 179, 187 (1995). Here, the term "projected" is not defined, and in ordinary usage future occurrences are not "projected" based on the assumption that the past will necessarily repeat itself.
>
> *Hamilton*, 560 U.S. _____ at 6.

When considering an undefined term in the Code ("projected disposable income"), the Court considered the interpretation that most harmonized with the Code as written.

With respect to the mechanism of lien stripping in this situation, a reading as advocated by Lindskog and by the amicus brief by the National Association of Consumer Bankruptcy Attorneys [NACBA] submitted in the Bankruptcy Court would achieve that level of clarity within the code without relying on any congressional intent, legislative history, or arcane definitions.

It does not do to suggest that Congress intended debtors to pay as much as possible under BAPCPA and therefore, the court must infer a result which is not compelled by the plain meaning of the statute. Nothing in Bankruptcy Code §1328(f) addresses lien stripping. Past practice relied upon Code sections 506(a) and 506(d) which remain intact. Following *Ron Pair*, Congressional intent is not to be inferred. It is to be seen from the exact expressions of Congress in the exact words of the statute. Finally, When Congress amends the Bankruptcy laws, it does not write on a clean slate. *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773 (1992).

### D. Policy Arguments Present a Better Result if Lindskog's Position is Upheld.

Jeannie Lindskog fully intends to complete her chapter 13 plan. At most, the issue presented is the extent to which M & I can participate as a creditor within the chapter 13 plan on account of its lien,

even though the debt has been discharged in personam as to the debtor in chapter 7. Perhaps the debt remains an obligation in rem and should be treated as a in rem unsecured debt of the debtor in her pot plan under the current chapter 13 case.

The courts in the *Jarvis* line of authority recognize that debtors like Jeannie Lindskog are entitled to relief under chapter 13 even though they may not get a discharge in a case filed within 4 years. Yet the *Jarvis* line suggests a chapter 13 case filed within 4 years of a prior chapter 7 case automatically raises a question of good faith. This suggestion is not supported by any text within the Bankruptcy Code. It is certainly not supported by the record here.

Jeannie Lindskog's plan is not contrived. She has real debts and a real financial hardship which she is trying to address under her plan. Had Congress intended that Debtor require a discharge in order to strip a lien a fully completed chapter 13 case, it certainly knew how to say so explicitly. Chapter 13 is a remedial statute. It is designed to assist a debtor in alleviating financial hardship.

A repayment plan need not make substantial repayment to unsecured creditors in order to be deemed filed in good faith. *See, e.g., In re Goeb*, 675 F.2d 1386 (9th Cir. 1982). In this case, however, Lindskog goes well beyond this threshold standard. In contributing a substantial portion of her monthly income to this Chapter 13 plan, she proposes paying back in full all unsecured claims filed against her in a timely fashion; pay the remainder of a claim on a vehicle, and cover administrative claims, all within the time allowed for in her plan. Lindskog filed her Chapter 13 bankruptcy over a year after she received her discharge in chapter 7. This Chapter 13 was not planned as part of her "fresh start" she was to achieve in Chapter 7. If called on to testify, Ms. Lindskog will state that she did not believe that the junior lienholders had any economic reason to foreclose since their liens were under water and were likely to remain that way. Rather, this was a necessity caused her by financial situation, the devaluation of the value of her home, and factors beyond her control. Given the newly arising need for chapter 13, however, there is no reason why Ms. Lindskog should not be entitled to all of the benefits and protections of chapter 13 including lien stripping.

Absent a favorable ruling in here, Ms. Lindskog will be forced to deal with her debts the best she

15

can for another two years, perhaps lose her car and perhaps suffer wage garnishments. Meanwhile M & I will never foreclose on its mortgage lien. It has no rights in personam against Ms. Lindskog. There is no equity in the house from which it could benefit. The instant case would end up getting dismissed whereupon Ms. Lindskog would file a new chapter 13 case sometime in 2012, achieving the same result as could be accomplished right now. Congress could not have intended such a ludicrous result.

It is through no action of either Lindskog or M&I that the lien holds no monetary value. M&I's lien has been damaged as a result of outside market forces and the rapid decline of property values in Wisconsin as in the entire nation. It is important to note, however, that there will not be any windfall for Lindskog. A decision permitting the avoidance of M&I's lien and declaring it to be completely without value will merely confirm the facts as they already exists.

## V. CONCLUSION

Based upon the facts in the record and the Code, Lindskog respectfully requests this court to concur with Judge Randa and the numerous Bankruptcy Court decisions ruling favorable for similarly situated debtors. Under the Bankruptcy Code, fully unsecured liens may be stripped in chapter 13 irrespective of whether a discharge is available. There is no issue concerning the good faith of Ms. Lindskog's chapter 13 case. *In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005); §§1325(a)(3), (7). If

such a question is raised, however, Ms. Lindskog will be able to demonstrate her good faith with little difficulty.

Dated: June 16, 2011

Respectfully Submitted,

*Ryan Blay*
David P. Leibowitz
Ryan Blay

Lakelaw
6905 Green Bay Road, Suite 101
Kenosha, WI 53142
Telephone: 262-694-7300
Fax: 262-694-7301
dleibowitz@lakelaw.com; rblay@lakelaw.com
State Bar Nos. 1058663 and 1076006